GRACE M. GIBESON, APPELLANT, v. DAVID SKIDMORE, RESPONDENT.

Submitted July 9, 1923—Decided November 19, 1923.

1. An owner or occupier of premises who by express invitation or by invitation to be implied from acts and conduct, induces persons to make use of the premises, is under a duty to exercise ordinary care to render the premises reasonably safe for such purposes.

2. The gist of the liability consists in the fact that the injured party did not act merely on motives of his own, to which no act or sign of the owner or occupier contributed, but that he entered the premises because he was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used in the manner in which he used them, and that such use was not only acquiesced in, but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used.

3. The defendant owner leased to a library association "all of store and storeroom" on the first floor of premises, "with access to rear entrance; also use of sink and water" in the rear room. The evidence tended to show that, at the request of the librarian, he put three nails in the wall of the back room, to the left of the door leading from the front room, "for the ladies of the library to hang their hats and coats on, and gave them permission to do that;" that about a week later, thinking the nails insufficient, he voluntarily substituted clothes hooks for the nails; that the plaintiff, the assistant to the librarian, placed her coat and hat upon one of these hooks, and at that time the floor was solid; that shortly thereafter the defendant, who lived in another part

of the house, raised and left open, without her knowledge, a trap
door near where she hung her coat and hat; that when she went
to get them she fell into such opening, sustaining injury. *Held,*
that the question whether or not the plaintiff was an invitee was
for the jury.

On appeal to the Supreme Court.

For the appellant, *Freeman Woodbridge.*

For the respondent, *Russell E. & A. Dudley Watson.*

The opinion of the court was delivered by

TRENCHARD, J.   On January 24th, 1922, David Skidmore,
the defendant below, leased to Elmer Boyd, who acted for
the Highland Park Library Association, ."all of store and
storeroom" on the first floor of premises in Highland Park,
"with access to rear entrance, also use of sink and water" in
the rear room.

On March 22d, 1922, the plaintiff, Miss Gibeson, fell into
the cellar through an open trap under the stairs at a point
adjoining, if not indeed part of the rear room, and thereafter
brought this action to recover from the landlord damages
resulting to her from such fall.   The trial, at the Middlesex
Circuit, resulted in a verdict for the defendant, directed by
the judge, and the plaintiff appealed from the consequent
judgment.

We are of the opinion that such direction of a verdict can-
not be sustained.

The evidence tended to show that the plaintiff was on the
premises as assistant to the librarian of the association, to
whom the owner had rented the front room; that when
injured she was using part of the back room which, under
the lease, the tenants had a right to use, in common with
the owner, for access to the rear entrance and sink in that
room; that, as she was in the act of taking her coat and hat
from a hook in the wall, she fell through an opening in the
floor, of which she had no knowledge, the trap door of which
had been raised by defendant after she had placed her hat and
coat there.

Now, the rule is that an owner or occupier of premises, who by express invitation or by invitation to be implied from acts and conduct, induces a person to make use of the premises, is under a duty to exercise ordinary care to render the premises reasonably safe for such purposes. *Phillips* v. *Library Co.*, 55 *N. J. L.* 307.

In the instant case the defendant contended and the learned trial judge thought that there was no evidence of invitation, express or implied, and, hence, the plaintiff was a mere licensee to whom the defendant owed no duty except to refrain from acts willfully injurious. But we think there was evidence tending to show an invitation implied from the acts and conduct of the defendant from which arose the duty of reasonable care.

The gist of the liability, where it exists in cases such as this, consists in the fact that the injured party did not act merely on motives of her own, to which no act or sign of the owner or occupier contributed; but that she entered the premises because she was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used in the manner in which she used them, and that such use was not only acquiesced in, but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used. *Nolan* v. *Bridgeton and Millville Traction Co.*, 74 *N. J. L.* 559; *Phillips* v. *Library Co.*, 55 *Id.* 307.

Here the evidence tended to show that the defendant owner, at the request of the librarian, had at first put three nails in the wall of the back room, to the left of the door leading from the front room, "for the ladies of the library to hang their hats and coats on, and gave them permission to do that," and that about a week later, thinking these nails looked cheap for the purpose, he went and got some clothes hooks and, of his own motion, substituted them for the nails. The evidence disclosed that it was upon one of these hooks that the plaintiff hung her hat and coat, at the direction of the librarian, when she came to work. It tended to show that, at that time, the floor was solid, and that when she later

went to take them down she fell through the opening, which meanwhile had been made by the act of the defendant, who lived on the premises, in opening the trap door.

Now, considering the fact that the librarian and her assistants had a right to use the back room for the purposes mentioned in the lease, we think that the evidence that the defendant voluntarily placed the hooks there in the wall for the purpose of having the helpers at the library hang their hats and coats thereon, tended to show acts and conduct from which an invitation might be implied. It tended to show that thereby the defendant led the plaintiff to believe that the hooks were intended to be used in the manner in which she used them and that such use was not only acquiesced in, but was in accordance with the intention or design for which the place was adapted and prepared and allowed to be used. The mere fact that the hooks were to the plaintiff's left as she passed into the rear room, thereby requiring her to turn in that direction instead of to her right, in the direction of the sink and rear entrance, does not as a matter of law determine the non-liability of the defendant for the injury. Liability turns rather upon the question whether the defendant knew or ought to have known that what he did and permitted to be done might give rise in an ordinarily discerning mind to a natural belief that he intended that to be done which his conduct had led plaintiff to believe that he intended.

The trial judge thought that the case of *Fleckenstein* v. *Great Atlantic and Pacific Tea Company,* 91 *N. J. L.* 145, was controlling. But we consider that it is not in point. There the presence of the boy in the store of the defendant company was merely permissive. He was not there as a customer; he was not there on business, and there was no invitation to him, express or implied. In the instant case, as we have indicated, we think that it was open to the jury to find an implied invitation, and, hence, the direction of a verdict for the defendant was erroneous.

The judgment will be reversed and a *venire de novo* awarded.

*For affirmance*—BLACK, GARDNER, JJ.   2.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, TREN-CHARD, PARKER, KALISCH, KATZENBACH, WHITE, HEPPEN-HEIMER, ACKERSON, VAN BUSKIRK, JJ.   10.