MICHAEL CREAMER, PLAINTIFF, v. MAX LEVY AND SAMUEL BLUMENFIELD, CO-PARTNERS, TRADING AS LEONARD'S, DEFENDANTS.

Argued October 7, 1930—Decided June 20, 1931.

Before GUMMERE, CHIEF JUSTICE, and Justices TREN-CHARD and LLOYD.

For the rule, *Freeman Woodbridge.*

*Contra, Henry M. Spitzer (John E. Toolan,* of counsel).

The opinion of the court was delivered by

TRENCHARD, J. This suit was brought to recover damages for personal injuries sustained by plaintiff whilst upon defendants' property.

At the trial, at the Middlesex Circuit, the following facts appeared without substantial dispute. The defendants conduct a store in New Brunswick. Plaintiff was not regularly employed by the defendants. On August 16th, 1928, following a rain storm defendants engaged him to clear away some debris that had accumulated in the yard in the rear of their store during the storm. The debris had obstructed a drain pipe in the yard so that the water in the yard flowed through a doorway in the rear of defendants' store and damaged some merchandise. In order to permit the water to

drain from the store, the defendant, Max Levy, chopped a hole in the floor just inside the rear doorsill. Plaintiff, at defendants' request and invitation, cleared the debris from the yard and after doing so attempted to enter the store from the rear door. His foot went through the hole in the floor, which had been left uncovered and unguarded, and as a result thereof he was injured. The plaintiff brought this suit to recover for such injuries and recovered a verdict.

The only reason assigned and argued for setting aside the verdict is that the court erred in refusing to nonsuit and to direct a verdict for the defendants upon the grounds (1) that the plaintiff exceeded the limits or bounds of his invitation; (2) that defendants were not negligent; (3) that the plaintiff was guilty of contributory negligence.

We think that the motions were properly denied.

The defendants do not question that the plaintiff was an invitee upon the premises for the purpose of clearing the debris from the yard. They, however, argue that defendants did not extend any invitation to the plaintiff to enter the store by the rear door after he had completed his work. We think that there was evidence that they did and that the plaintiff did not exceed the bounds of his invitation.

The evidence clearly indicates that the plaintiff was requested to work upon the premises; that the defendant Max Levy knew he was working in the yard; that the plaintiff was to be compensated for his labor; that the amount of compensation was to be fixed after the work was completed; that this compensation was to be determined when the plaintiff came into the store, the defendant Levy himself testifying that he expected plaintiff to come in through that rear doorway which was close by his work. There was an outer and inner door at this doorway. The defendant Levy testified that he left the outer door wide open and the inner door ajar, after asking the plaintiff how he was "making out." It is argued that the defendant Levy left the inner door "braced" two or three inches ajar for the purpose of securing it in that posture; but that question under the evidence was in dispute, and the plaintiff testified that the door swung open

easily, and that he did not know that it was "braced" or intended to be "braced."

In view of the fact that plaintiff entered the yard from the rear by letting himself down a seven-foot concrete retaining wall, it is argued that he should have climbed up that wall and then walked around a vacant lot to the front of the store and entered through the front door after he had finished his work. But we think that the circumstances of the present case imposed no such duty upon him as a matter of law.

In such a case as this the gist of the liability consists in the fact that the person injured did not act merely on motives of his own, to which no act or sign of the owner or occupier contributed, but that he entered the premises because he was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used in the manner in which he used them, and that such use was not only acquiesced in, but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used. *Phillips* v. *The Library Co.,* 55 *N. J. L.* 307.

And in *Gibeson* v. *Skidmore,* 99 *N. J. L.* 131, the test is stated in the following language:

"Liability turns rather upon the question whether the defendant knew or ought to have known that what he did and permitted to be done might give rise in an ordinarily discerning mind to a natural belief that he intended that to be done which his conduct had led plaintiff to believe that he intended."

In the instant case the evidence tends to show that the plaintiff did not act on motives of his own. He was asked by defendants to enter upon the premises to clean the yard. There was one natural entrance from the yard, and that was the door into the store, which certainly was intended by defendants to be used to get into or out of the yard and the doorway surely was adapted and prepared to be used for the use which the plaintiff made of it, to wit, to leave the yard and go into the store to get his pay as he was expected to do.

In the Phillips case there was no express invitation to use the toilet in the back yard and the path the plaintiff took and upon which she was injured was not the brick walk provided by the defendant but a path diagonally across the yard which people had been accustomed to use.

In the instant case the mere fact that there was one way that was safe and another that the owner had made unsafe does not, as a matter of law, determine the non-liability of the owner for the injury sustained by the plaintiff in using the latter.

In *Nolan* v. *Bridgeton and Millville Traction Co.*, 74 N. J. L. 559, 562, it was said:

"A person entering upon premises by invitation, express or implied, and using a road which for many years had been used with the acquiescence of the owner, is not precluded from recovering damages for an injury caused by a danger placed by the owner in the road, solely on the ground that the owner had provided another way that was safe and might have been used by the plaintiff."

In that case plaintiff started to leave defendants' premises by an old road and the wagon which he was driving struck the hole and caused his injuries. In that case, as well as in the Phillips case, the defendants invoked the familiar doctrine, which this defendant does, that liability of the occupant of premises for their condition is only co-extensive with the invitation, but the court sustained the judgment for the plaintiff and held that motions to nonsuit and to direct a verdict were properly denied.

We believe that the cases cited by defendants have no application to the facts in the instant case for reasons now to be stated:

In *Ryerson* v. *Bathgate*, 67 N. J. L. 337, the defendant opened a door slightly and invited the plaintiff to "put her [cat] in here" and not to walk in as she did. The court in affirming a nonsuit said in part, "the natural thing for her to do was to place the cat through the opening with her hands and then permit Silvernail to quickly close the door so as to detain the cat." In the instant case the plaintiff did the

natural thing and just the thing which the defendant Levy testified he expected him to do. He expected the plaintiff to come in the store by the rear door. Why? Because it was the natural thing for the plaintiff to do and because he had told the plaintiff that he would pay him after the job was done.

In *Bonfield* v. *Blackmore*, 90 *N. J. L.* 252, and in *Fitzpatrick* v. *Cumberland Glass Manufacturing Co.*, 61 *Id.* 378, and in *Saunders* v. *Smith Realty Co.*, 84 *Id.* 276, there was no more than a mere passive acquiesence by the owner in a certain use of his property, and it was held that such mere passive acquiescence imposed no obligation upon him to keep it in safe condition for the benefit of the user. But in the instant case there was more than a mere passive acquiescence in the use of defendants' premises; there was an invitation to come upon the premises and it was certainly open to the jury to find from the evidence that his use of the rear door was intended.

The case of *Guse* v. *Martin*, 96 *N. J. L.* 262, is not at all in point. There the evidence conclusively showed that the plaintiff had no invitation, express or implied, to use the elevator which he attempted to use without any reason whatsoever. In the instant case the evidence tends to show that there was ample reason for plaintiff using the back door to go into the store and that such use was within the bounds of the invitation.

Under all of the circumstances it is clear that the question of invitation and the extent thereof was for the jury and not for the court. *Steinberg* v. *Bogalin Dyers and Cleaners*, 105 *N. J. L.* 294.

The defendants contend that they were not negligent and hence the motions to nonsuit and to direct a verdict for the defendant should have been granted. If the plaintiff was impliedly invited to use the particular entrance, as the jury could and did find, then the defendants were under the duty to exercise ordinary care to render the premises reasonably safe for such purpose, by covering or guarding the hole that was chopped in the floor immediately inside the rear door,

or by directing plaintiff's attention to the hole or by otherwise warning him.

That the evidence tends to show the defendants did not do. The defendants admitted that the hole was not covered or guarded. The plaintiff testified that he did not know of the presence of the hole and had not been told or warned of it. True the defendant Levy testified that he warned plaintiff as to the hole. But that certainly left a jury question upon that topic.

The defendants also contend that the plaintiff was guilty of contributory negligence, and hence for that reason the motions to nonsuit and for a direction should have been granted.

But we think that question likewise was for the jury. The plaintiff finished his work about seven-thirty P. M. on August 16th, 1928. There were no lights in the store, and the presence of partitions rendered the rear somewhat dark. The defendants say that the plaintiff was negligent because he had knowledge of the hole in the floor into which he fell. But the question of plaintiff's knowledge, as we have seen, was in sharp dispute under the evidence, and hence the question of contributory negligence was for the jury.

The rule to show cause will be discharged, with costs.