13 N.J. Super. 342 (1951)
80 A.2d 439
LAWRENCE CORRAO, PLAINTIFF-RESPONDENT,
v.
WEST JERSEY CORPORATION, A CORPORATION OF NEW JERSEY, AND ELIZABETHTOWN WATER COMPANY, CONSOLIDATED, A CORPORATION OF NEW JERSEY, DEFENDANTS; WEST JERSEY CORPORATION, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 16, 1951.
Decided April 25, 1951.
*344 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Joseph Weintraub argued the cause for respondent (Mr. John L. McGuire, attorney).
Mr. George J. Gockeler argued the cause for appellant (Messrs. Lahey & Gockeler, attorneys).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
Appellant, West Jersey Corporation, abandoned at the oral argument all points argued in its brief except the proposition that the plaintiff was not, in contemplation of law, its invitee upon that portion of its premises where plaintiff met with the accident for which he recovered judgment upon a jury verdict returned in the Law Division, Union County. If that proposition be resolved against the appellant, that is, if the trial court properly denied appellant's motion for judgment and left to *345 the jury the decision to say whether plaintiff was impliedly invited by the appellant to be at that place at that time, then the judgment below must be sustained.
Defendant, West Jersey Corporation, owned a multi-storied office building having several stores on the ground floor. One of the stores was let to defendant, Elizabethtown Water Company, Consolidated. A judgment of dismissal as to the Water Company was entered at the close of plaintiff's proofs and was not appealed.
Plaintiff, a window cleaner, was employed by Elizabeth Window Cleaning Company which was under contract with the water company to clean the windows on the leased premises. The two windows located at the back of the store faced on an areaway not part of the leasehold but reserved to the lessor's control. Each of the windows was completely covered with an iron bar grillwork, installed by appellant some years before the water company leased the store. The space between the outer sides of the panes in each window and the grillwork was too narrow to permit the washing of such outer sides from within the demised premises; it was necessary to go outside for that purpose.
Beneath the two windows was a stairwell in the areaway with stairs descending along the wall and used by the landlord's employees to reach the boiler room in the cellar. The stairwell was covered by a shed-like structure about three feet high erected by the appellant. The structure extended out from the building wall and for most of its length along the wall was flat roofed with a wood covering approximately ten feet long and four feet wide topped with tar paper. That part of it gave the appearance of a platform built level with the bottom of the window sill of one of the windows. The portion of the structure containing the door opening upon the stairway slanted down from the platform edge to ground level; the other window was located a foot or two above the slanted door.
Plaintiff had worked for the window cleaning company only one week and this was the first occasion upon which he *346 washed the water company's windows. His foreman that day, however, had washed windows on the premises for over 20 years. After the plaintiff and the foreman had cleaned the inner sides of the windows from within the store, the plaintiff went back to the areaway to wash the outer sides of the two rear windows. He stood first upon the slanted door, reached within the iron grillwork and washed the window above that door. Then he stepped up on to the platform to wash the window centered above it. As he stepped toward the window the platform gave way beneath him and he was precipitated into the stairwell, suffering the injuries for which this suit was brought.
His foreman had cleaned the back windows three or four months previously, standing upon the platform when cleaning the window above it. He testified he noticed at that time that the platform seemed shaky and said that when he finished he notified the appellant's janitor and complained that it should be fixed. The janitor denied this and also that he had known that the window cleaners stood on the platform while cleaning that window. He admitted, however, that when his own work required, it was his practice to stand upon the platform to clean gutters above the windows.
Plaintiff's foreman further testified that it was impossible to use a ladder to wash the window above the platform because "that shack is too wide. Ladder stays too far away from the wall. It can't support a ladder," and also that the iron grillwork covering the windows makes it impossible to stand in the areaway beyond the structure and to use a pole "because there is iron bar from outside. * * * no could pull the squeegee." This testimony was contradicted by a witness offered by the defendant, but in the determination of the question argued plaintiff is entitled to have that evidence accepted as true. Cirulli v. Licata, 10 N.J. Super. 449 (App. Div. 1950).
A landlord, who by express invitation or by invitation to be implied from acts and conduct induces a tenant or person admitted by the tenant to make use of premises not *347 part of the leasehold but within the landlord's control, is under a duty to exercise ordinary care to render the premises reserved by him reasonably safe for a permitted use. Phillips v. The Library Company of Burlington, 55 N.J.L. 307 (E. & A. 1893). The rule applies not only to the halls, stairs, elevators and other approaches to the part of the land leased to the lessee but also to such other parts of the land or building to the use of which by the express or implied terms of the lease the lessee is entitled. Restatement, Torts, (1934), vol. 2, sec. 360. The tenant and such persons in that circumstance enter the reserved parts of the land on a matter deemed in law to be directly connected with the business of the landlord and are therefore entitled to expect that the lessor will exercise reasonable care to discover and remedy dangerous conditions. Restatement, supra, secs. 343, 360. See also 64 Harvard Law Review 913, at 917 (April 1951).
The water company's right to enjoyment and use of the leased premises clearly embraced the right to clean its windows and to employ others for the purpose. The fact that in the case of the outer sides of the panes of the back windows cleaning was not possible from within the store because of the presence of the iron gratings supplied a reasonable basis for an implication that the tenant was entitled to enter the rear of the landlord's premises for the purpose. Restatement, supra, sec. 343. See Sezzin v. Stark, 49 A.2d 742 (Ct. of Apps. Md. 1946). The case of Schaefer v. Colleoni Realty Co., 4 N.J. Misc. 405 (Sup. Ct. 1926) illustrates the principle. In that case the tenant had covenanted to make repairs. A wash basin attached to a wall became loose. The wall was one of those that enclosed an elevator shaft outside the demised premises. The tenant employed a plumber to attend to the repairs and to make the wash basin secure. The plumber found that to do so it was necessary to drill holes through the wall to insert new bolts and to set up the nuts on the other side of the wall, where the elevator worked. After boring the holes and inserting the bolts he entered the elevator shaft to screw up the nuts. While in the elevator shaft *348 he was injured when the operator ran the elevator. The evidence was in conflict whether the elevator operator had been warned of the plumber's presence. In that case, as in this case, the only question involved was whether the finder of fact was entitled to find that the plaintiff was in a legal sense invited to be in the place where he was when injured. It was held that the finding that the plaintiff was an invitee was fully justified in the circumstances, the court stating, "If proper repairs to the wash basin called for bolts instead of screws, and this was a question of judgment on the part of the plaintiffs, then it would seem that the tenants were not only authorized but required to enter the elevator shaft to such reasonable extent as was necessary or convenient to make these bolts fast, and if they were authorized to do so, they were authorized to employ a proper workman to do this for them." We perceive no distinction based on the fact that it does not appear in the present case that the water company had expressly covenanted to keep the windows cleaned. The right to clean the windows was an incident to the tenant's enjoyment of the premises leased and it follows that the jury might reasonably conclude from all the circumstances that the lessee was impliedly authorized to do that work from the part of the premises reserved to the lessor's control outside of the leasehold.
Appellant's argument stresses the point that in any event the invitation would not extend to the use of the platform for that purpose. We cannot say in the circumstances of this case that this conclusion follows indisputably if we give plaintiff's proofs, as we must, the benefit of the legitimate inferences to which he is entitled. Opposite inferences may reasonably be drawn from the evidence on his behalf and in such cases the dispute is for the jury. In this type of action "liability turns * * * upon the question whether the defendant knew or ought to have known that what he did and permitted to be done might give rise in an ordinarily discerning mind to a natural belief that he intended that to be done which his conduct had led plaintiff to believe that he *349 intended." Gibeson v. Skidmore, 99 N.J.L. 131 (E. & A. 1923); Creamer v. Levy, 108 N.J.L. 26 (Sup. Ct. 1931). The gist of the liability consists in the fact that the injured party did not act merely on motives of his own to which no act of the landlord contributed, but that he used the facility because he was led by the acts or conduct of the landlord to believe that the facility was intended to be used in the manner in which he used it and that such use was not only acquiesced in but was in accordance with the intention or design for which the facility was adapted or allowed to be used. Gibeson v. Skidmore, supra; Phillips v. The Library Company of Burlington, supra; Black v. Central R.R. Company, 85 N.J.L. 197 (E. & A. 1913); Fort v. Reid Ice Cream Company, 98 N.J.L. 559 (E. & A. 1923); Nolan v. Bridgeton & Millville Traction Company, 74 N.J.L. 559 (E. & A. 1907); cf. Saunders v. Smith Realty Co., 84 N.J.L. 276 (E. & A. 1913). The case is not within the line of cases relieving a landlord of liability as a matter of law when the structure which collapses from the weight or pressure exerted upon it by the person injured was obviously not a structure designed for such use. Gavin v. O'Connor, 99 N.J.L. 162 (E. & A. 1923) (a clothes pole in the backyard); Egan v. Krueger, 103 N.J.L. 474 (E. & A. 1927) (a screen in a window); Saunders v. Eastern Hydraulic Brick Co., 63 N.J.L. 554 (E. & A. 1899) (a mullion in a skylight); Heuser v. Reilly, 128 N.J.L. 533 (Sup. Ct. 1942) (a window moulding); New York & New Jersey Telephone Company v. Speicher, 59 N.J.L. 23 (Sup. Ct. 1896) (cross bar on a telephone pole). This platform had previously been used by plaintiff's foreman for the very purpose contemplated by plaintiff and, indeed, had been used by the landlord's own janitor in connection with his duties. These proofs buttressed the inference reasonably to be gathered from its appearance that the platform was sturdy enough to support plaintiff's weight, and with plaintiff's evidence that the presence of the platform in juxtaposition to the barred window above it prevented proper washing of the *350 window by use of a ladder or by standing at a place in the areaway and using a long pole, also warranted the inference that appellant should have foreseen that the situation would lead an ordinary discerning mind to a natural belief that the platform was open to use as a place from which to wash the window. At the least the question whether the platform was designed only to protect the stairwell from the elements or might in the circumstances reasonably lead a window cleaner to believe that it was provided also for use for the purpose intended by him, is a matter about which reasonable minds on these proofs could honestly differ. In such case the question was one for the jury. Smith v. Mountain Ice Co., 74 N.J.L. 26 (Sup. Ct. 1906); Murphy v. Core Joint Concrete Pipe Co., 110 N.J.L. 83 (E. & A. 1933).
Affirmed.